## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL MANISCALCO,

                Plaintiff,

      v.

DET. DENNIS CLAIR, DET. THOMAS
SOMOGYI, AND THE CITY OF
PHILADELPHIA,

                Defendants.

Case No. 2:14-cv-06521-NIQA

### FIRST AMENDED COMPLAINT

Plaintiff Daniel Maniscalco ("Plaintiff"), by and through his undersigned counsel, hereby files this First Amended Complaint and, in support thereof, avers as follows:

### Nature of the Action

1.  This is an action for money damages brought pursuant to 42 U.S.C. § 1983, the Fourth Amendment to the United States Constitution, and state law, against (i) Detectives Dennis Clair ("Defendant Clair") and Thomas Somogyi ("Defendant Somogyi"), police detectives of the City of Philadelphia, each in their individual capacities and in their capacities as employees of the City of Philadelphia, and (ii) the City of Philadelphia.

2.  Defendants Clair and Somogyi used excessive force on the person of Plaintiff, violating his rights under the Fourth Amendment to the United States Constitution.

3.  This action, brought pursuant to 42 U.S.C. § 1983, arises out of the use of excessive force against Plaintiff by detectives employed by the City of Philadelphia on or about January 3, 2013.

4.      Defendants Clair and Somogyi assaulted, battered, and intentionally inflicted emotional distress upon Plaintiff.  It is further alleged that Plaintiff was seriously injured as a result of Defendants Clair and Somogyi's unreasonable use of force.

5.      Defendants Clair and Somogyi's use of excessive force is a result of policies and customs of Defendant City of Philadelphia and/or the failure of Defendant City of Philadelphia to adequately train and/or supervise its police officers.

## Parties

6.      Plaintiff Daniel Maniscalco is an adult citizen of the United States of America who currently resides at Pennsylvania State Correctional Institute – Benner Township in Bellefonte, Pennsylvania.

7.      Upon information and belief, Defendant Clair is and was at all times relevant to this First Amended Complaint a resident of Pennsylvania and a police detective employed by the City of Philadelphia Police Department.  At all times relevant to this First Amended Complaint, Defendant Clair was acting under the color of state law as a City of Philadelphia police detective.

8.      Upon information and belief, Defendant Somogyi is and was at all times relevant to this First Amended Complaint a resident of Pennsylvania and a police detective employed by the City of Philadelphia Police Department.  At all times relevant to this First Amended Complaint, Defendant Somogyi was acting under the color of state law as a City of Philadelphia police detective.

9.      Defendants Clair and Somogyi are being sued in both their individual capacities and their official capacities as employees of the City of Philadelphia.

10.      Defendant City of Philadelphia is a municipal corporation.  At all times relevant to this First Amended Complaint, the City of Philadelphia was the employer of Defendants Clair and Somogyi.

2

**Jurisdiction and Venue**

11.     Plaintiff hereby incorporates each of the foregoing paragraphs as if set forth fully herein.

12.     This Court has subject matter jurisdiction over the claims presented herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises pursuant to 42 U.S.C. § 1983 to redress the deprivation of rights, under color of state law, secured by the Fourth Amendment of the United States Constitution.

13.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to this First Amended Complaint occurred in the City of Philadelphia in the Commonwealth of Pennsylvania.

**Facts**

15.     Plaintiff hereby incorporates each of the foregoing paragraphs as if set forth fully herein.

16.     On or about January 3, 2013, Plaintiff was walking with his nephew, Juliano Gilpin, along Cantrell Street, between 10th and 11th streets, in Philadelphia, Pennsylvania.

17.     During the course of this walk, Plaintiff noticed Defendant Clair crossing the street toward him and his nephew.

18.     Defendant Clair was in plain clothes (i.e., not in a police uniform) and did not identify himself as a police officer.

19.     Plaintiff did not know that Defendant Clair was a police officer.

20.     As Plaintiff turned to walk around a telephone pole, Defendant Clair, without provocation, grabbed Plaintiff and they both crashed into a fence.  Defendant Clair still did not identify himself as a police officer or tell Plaintiff why he had approached and grabbed him.

21.     Plaintiff attempted to push Defendant Clair off of his person and asked Defendant Clair to get off of him.

22.     Defendant Clair, without provocation, began punching Plaintiff in the face.

23.     At this time, Plaintiff instructed his nephew to get his mother (Plaintiff's sister) who lived nearby.

24.     Defendant Clair, who *still* had not identified himself as a police officer, continued punching Plaintiff.

25.     At some point, Defendant Somogyi appeared on the scene and tackled both Plaintiff and Defendant Clair.

26.     Defendant Somogyi yelled "Stop resisting, Police."  This was the first time that either Defendant Somogyi or Defendant Clair identified himself as a police officer.

27.     Defendants Somogyi and/or Clair proceeded to handcuff Plaintiff.  While Plaintiff was being handcuffed, Defendant Clair continued to punch Plaintiff in the face.

28.     Detective Somogyi began kicking Plaintiff, who was still handcuffed and now on the ground, in the ribs.

29.     At some point during Defendants Clair and Somogyi's assault, one or both of them yelled at Plaintiff "Where the fuck is the gun?" and told Plaintiff that they would break his "fucking neck" if he moved.

30.     Defendants Clair and Somogyi did not find a gun on Plaintiff's person at any point during this incident.  Indeed, Plaintiff did not have a gun on his person when he was approached and beaten by Defendants Clair and Somogyi.

31.     Plaintiff was taken to the First District police station, at 2301 South 24th Street, Philadelphia, Pennsylvania.

32.     At the police station, Plaintiff repeatedly asked for medical attention for the injuries he had suffered from the actions of Defendants Clair and Somogyi.  Plaintiff's requests were denied.

33.     Defendants Clair and Somogyi next told Plaintiff that if he told them what they wanted to hear (i.e., confessed to a crime he was suspected of committing), he would then receive medical attention.

34.     Plaintiff was kept in the First District police station overnight through the evening of January 3, 2013 and the early morning of January 4, 2013.

35.     On January 4, 2013, Defendants were preparing to take Plaintiff from the First District police station to a county prison, Curran-Fromhold Correctional Facility ("CFCF"), in Philadelphia, Pennsylvania.  But a police officer in the First District police station told Defendants Clair and Somogyi that CFCF would not accept Plaintiff looking the way he did (i.e., with an eye swollen completely shut and severe bruising on his face and body).

36.     So, on January 4, 2013, Plaintiff was taken to Methodist Hospital on South Broad Street in Philadelphia, Pennsylvania, escorted by a Philadelphia police officer who did not participate in attacking and beating Plaintiff the prior day.

37.     At Methodist Hospital, Plaintiff underwent a CT scan, and a medical professional told Plaintiff he had suffered head trauma and contusions to his left eye.

38.     At some point while he was at the hospital, the Philadelphia police officer who had escorted Plaintiff to the hospital brought a nurse over to Plaintiff.

39.     The nurse instructed Plaintiff to lift his arms, which caused excruciating pain to Plaintiff due to the injuries to his ribs.  Plaintiff repeatedly asked to undergo an X-ray of his ribs, but the police officer told the nurse that Plaintiff was "fine" and that "he's done here."

40.     Plaintiff was taken back to the First District police station, where his mug shots were taken.  Plaintiff's mug shots will show that his eye was swollen shut and his face was bruised.

41.     At some point later that same day (on January 4, 2013), Plaintiff was taken to CFCF.

42.     During the intake procedure at CFCF, Plaintiff was asked by intake personnel if the injuries he had sustained were the result of police brutality.  Plaintiff responded that they were.  Plaintiff also signed a yellow piece of paper that indicated his injuries were the result of police brutality.

43.     Also during the intake procedure at CFCF, Plaintiff was given an ID bracelet. The injuries to Plaintiff's face were so severe that the personnel at CFCF had to put an old picture of Plaintiff (from when he was admitted in or around 2003 for an unrelated incident) on his ID bracelet.

44.     Upon information and belief, CFCF's medical records reflect that Plaintiff suffered from both head trauma and eye contusions when he arrived on January 4, 2013.

45.     As direct and proximate cause of the aforementioned actions and/or inactions of Defendants, Plaintiff suffered substantial injuries and damages, including physical and personal injuries and mental anguish.

46.     Specifically, Plaintiff sustained fractured ribs, a bloody nose and mouth, and facial trauma from Defendants Clair and Somogyi's excessive use of force.  Since the assault, Plaintiff has suffered continuing damages, including, but not limited to, chronic pain in his ribs, soreness around his eye, and emotional distress.

47.     Plaintiff endured and will continue to endure pain and suffering as a result of the injuries received during the incident described.  Plaintiff continues to suffer mental and emotional distress, mental anguish, and physical scars as a result of the attack.  He also continues to experience headaches.

48.     Defendants Clair and Somogyi applied this excessive force to Plaintiff sadistically and maliciously.

49.     At all times relevant to this First Amended Complaint, Defendants acted under color of state law.

50.     The actions of Defendants violated the clearly established and well-settled federal, constitutional, and state law rights of Plaintiff to be free from the use of excessive, unreasonable, and unjustified force against his person.

51.     Defendant City of Philadelphia has a history of lack of police oversight and police misconduct, including excessive use of force, which Defendant City of Philadelphia and its policymakers, Mayor Michael Nutter and Police Commissioner Charles H. Ramsey, were responsible for, were aware of, acquiesced in and/or were deliberately indifferent to.  From 2009 to 2014, approximately 1,223 lawsuits were brought against the City of Philadelphia for police

misconduct.[1]  During the same period, the City of Philadelphia paid more than $40 million in damages and settlements for police misconduct lawsuits.[2]

52.     Nearly once a week (390 times over the past eight years) Philadelphia police officers have opened fire at a suspect.[3]  In 2012, it was reported that Philadelphia had one of the highest rates of shootings by police in the country.[4]  The number of police officer shootings increased by almost fifty percent in 2012 from the previous year.[5]

53.     In response to an increase in officer-involved shootings, in 2013 Police Commissioner Ramsey requested technical assistance from the Department of Justice's Office of Community Oriented Policing Services ("COPS Office") which led to an investigation and assessment of the use of deadly force over a seven-year period, administrated as part of the COPS Office's Collaborative Reform Initiative (hereinafter, the "Initiative").[6]  The Initiative was

---

[1]   *See* Todd Feathers, *Police misconduct in Philadelphia, by the numbers*, MuckRock (Oct. 20, 2014), https://www.muckrock.com/news/archives/2014/oct/20/philly-lawsuits/.  A copy of this article is attached hereto as Exhibit A.

[2]   *Id.*

[3]   *See* Matt Apuzzo, *Justice Dept., Criticizing Philadelphia Police, Finds Shootings by Officers Are Common*, N.Y. Times (Mar. 23, 2015), http://www.nytimes.com/2015/03/24/us/justice-dept-criticizing-philadelphia-police-finds-shootings-by-officers-are-common.html.  A copy of this article is attached hereto as Exhibit B.

[4]   *See* Sam Wood, *Exclusive: Shootings by Philly police soar as violent crime plummets*, Philly.com (May 14, 2013), http://www.philly.com/philly/news/Police_involved_shootings_in_Philly_soar_as_violent_crime_falls.html.  A copy of this article is attached hereto as Exhibit C.

[5]   *Id.*

[6]   *See Department of Justice Releases Report on Philadelphia Police Department's Use of Deadly Force,* Department of Justice (Mar. 23, 2015), http://www.justice.gov/opa/pr/department-justice-releases-report-philadelphia-police-departments-use-deadly-force.  A copy of this article is attached hereto as Exhibit D.

designed to provide technical assistance to agencies facing significant law enforcement-related issues.[7]  The Initiative was launched in November 2013, and an initial report on the Philadelphia Police Department was released in March 2015 (hereinafter "the DOJ Report").[8]

54.     According to the DOJ Report, Defendant City of Philadelphia's use of force policies need to be more explicit and officers need more training on them.[9]

55.     According to the DOJ Report, Defendant City of Philadelphia's training on use of force concepts and tactics is too infrequent, lacks appropriate concepts, and lacks standards, which leaves officers inadequately prepared to make decisions in a complex environment.[10]

56.     According to the DOJ Report, Defendant City of Philadelphia lacks a field training program for officers.[11]

57.     Defendant City of Philadelphia's use of force review process is inadequate.

58.     Upon information and belief, City of Philadelphia Mayor Michael Nutter and Philadelphia Police Commissioner Charles H. Ramsey, policymakers for the City of Philadelphia, were responsible for, were aware of, acquiesced in, and/or were deliberately indifferent to the excessive use of force that caused Plaintiff's injuries resulting from Defendant City of Philadelphia's policies, practices, customs and/or procedures.

---

[7]   *Id.*

[8]   *Id.*

[9]   *See* Fachner, George, and Steven Carter. *An Assessment of Deadly Force in the Philadelphia Police Department*. Collaborative Reform Initiative, Washington, DC: Office of Community Oriented Policing Services, at 125 (2015).  A copy of this report is attached hereto as Exhibit E.

[10]   *Id.*

[11]   *Id.* at 80.

59.     Defendant City of Philadelphia, through its policymakers Michael Nutter and Charles H. Ramsey, as a matter of policy, practice and/or custom, has with deliberate indifference failed to adequately discipline, sanction, train and/or otherwise direct police officers, including Defendants Clair and Somogyi, thus condoning the use of excessive force.

60.     Defendant City of Philadelphia, through its policymakers Michael Nutter and Charles H. Ramsey, as a matter of policy, practice and/or custom, has with deliberate indifference failed to adequately discipline, sanction, train, and/or supervise police officers, including Defendants Clair and Somogyi, thereby causing police officers to engage in the conduct described above.

61.     Defendant City of Philadelphia, through its policymakers Michael Nutter and Charles H. Ramsey, as a matter of policy, practice, and/or custom, has with deliberate indifference failed to conduct proper and balanced investigations of complaints of unreasonable use of force and excessive use of force against civilians by police officers, thereby causing and encouraging police officers, including Defendants Clair and Somogyi, to engage in the unlawful conduct listed above.

62.     The acts and omissions of Defendant City of Philadelphia, through its policymakers Michael Nutter and Charles H. Ramsey, constitute deliberate indifference and led directly to the unlawful conduct described above.

63.     As a direct and proximate result of the above-described actions of Defendants, Plaintiff suffered and continues to suffer great physical pain and mental anguish.

## COUNT I:

**42 U.S.C. § 1983 AGAINST DEFENDANTS CLAIR AND SOMOGYI:**
*USE OF EXCESSIVE FORCE*

64.     Plaintiff hereby incorporates each of the foregoing paragraphs as if set forth fully herein.

65.     This claim is alleged pursuant to Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983.

66.     The claims alleged above and herein are predicated upon the applicable law and controlling doctrine, which, at all times relevant to this incident, were clearly established.

67.     The actions of Defendants Clair and Somogyi, as described above, constituted excessive force in punching, kicking, and beating Plaintiff both before and while he was in handcuffs.

68.     As a direct and proximate result of Defendants Clair and Somogyi's conduct, which was carried out under color of state law, Plaintiff was deprived of his rights and privileges secured by the Fourth Amendment of the United States Constitution to be free from the use of excessive force.

69.     Defendants Clair and Somogyi violated a clearly established constitutional right.

70.     Defendants Clair and Somogyi knew or reasonably should have known that their actions violated that right.

71.     The actions of Defendants Clair and Somogyi were willful, wanton, reckless, callously indifferent, and in conscious disregard for the safety of others.

72.     As a direct and proximate result of the above-described actions of Defendants Clair and Somogyi, Plaintiff sustained severe injury, causing him great physical pain and mental anguish.

11

73.     Defendants Clair and Somogyi's actions were of such an outrageous nature as to rise to the level of intentional, willful, wanton, or reckless conduct.

## COUNT II:
## 42 U.S.C. § 1983 CLAIM AGAINST DEFENDANT CITY OF PHILADELPHIA:
### *MONELL CLAIM*

74.     Plaintiff hereby incorporates each of the foregoing paragraphs as if set forth fully herein.

75.     This claim is alleged pursuant to Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, and *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978).

76.     Michael Nutter, mayor of the City of Philadelphia, is a final decision and policymaker for the City of Philadelphia who possessed final, unreviewable authority with respect to the aforementioned policies and customs of Defendant City of Philadelphia because the mayor is responsible for all law enforcement within the City's boundaries.

77.     Upon information and belief, Charles H. Ramsey, Police Commissioner of the City of Philadelphia, is a final decision and policymaker for the City of Philadelphia who possessed final, unreviewable authority with respect to the aforementioned policies and customs of Defendant City of Philadelphia because he retains the authority to measure and direct the conduct and decisions of his subordinates and has official responsibilities and decision-making

authority with respect to police officer use of force and treatment of persons in police custody through training, supervision, sanctioning, and/or discipline of police officers.[12]

78.     Upon information and belief, Police Commissioner Ramsey was delegated with the authority for setting and implementing policies, training, supervision, and/or discipline of Philadelphia police officers.  This decision and policy-making authority extends to setting and implementing policies, training, supervision, and/or discipline with respect to officer use of force and treatment of persons in police custody.

79.     Upon information and belief, Police Commissioner Ramsey and Mayor Nutter were responsible for, were aware of, approved of, acquiesced in, and/or were deliberately indifferent to the excessive use of force that caused Plaintiff's injury in this case, through Defendant City of Philadelphia's policies, practices and/or customs, including the City of Philadelphia's policy or custom of allowing its officers to engage in excessive use of force and its failure to properly train, supervise, sanction, and discipline officers who use excessive force.

80.     Defendant City of Philadelphia, through its policymakers Michael Nutter and Charles H. Ramsey, was responsible for, was aware of, approved of, acquiesced in, and/or was deliberately indifferent to the above conduct through a policy, practice, custom, and/or procedure of the City of Philadelphia of its police officers and other personnel engaging in the excessive use of force.

---

[12]     *See, e.g.*, *Butts v. Ramsey,* No. CIV.A. 13-3374, 2014 WL 736584, at *5 (E.D. Pa. Feb. 25, 2014) ("The Third Circuit has at least twice in published opinions concluded that the Police Commissioner has final policymaking authority in Philadelphia.  Specifically, where the Police Commissioner 'retained the authority to measure the conduct and decisions of his subordinates' and acquiesced to the actions of his subordinates, the actions of the Commissioner will be imputed to the City as long as there is sufficient evidence that the Commissioner had official 'responsibilities and decisionmaking authority with respect to the conduct at issue.'" (citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 468 (3d Cir.1992) and *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1481 (3d Cir.1990)).

81.     Defendant City of Philadelphia, through its policymakers Michael Nutter and Charles H. Ramsey, failed to supervise, properly sanction, or discipline officers, including Defendants Clair and Somogyi, thereby causing these officers to engage in the above conduct.

82.     Defendant City of Philadelphia, through its policymakers Michael Nutter and Charles H. Ramsey, was responsible for, acquiesced in, and/or was deliberately indifferent to the above conduct through policy, practice, customs, and/or procedure by failing to:

   a.     Develop, implement, carry out, and ensure compliance with policies, practices, customs, and/or procedures necessary to prevent the excessive use of force by police officers and other personnel; and/or

   b.     Properly and adequately train, test, and instruct police officers on the proper procedures for use of force and treatment of persons in custody of the police; and/or

   c.     Supervise police officers regarding their use of force and treatment of persons in custody of the police.

83.     Upon information and belief, Defendant City of Philadelphia, through its policymakers Michael Nutter and Charles H. Ramsey, was aware of deficiencies in the City of Philadelphia's training of police officers and other personnel regarding the use of force; failed to adequately and properly train its employees and other personnel, including Defendants Clair and Somogyi, regarding the use of force; and displayed deliberate indifference to the constitutional rights of Plaintiff, and such inadequate training was a substantial contributing factor to Plaintiff's injury.

84.     Upon information and belief, both Defendants Clair and Somogyi acted at the direction of, or with the approval or acquiescence of, Mayor Michael Nutter and Police

14

Commissioner Ramsey with respect to the aforementioned excessive use of force on Plaintiff on or about January 3, 2013.

85.     As a direct and proximate result of Defendant City of Philadelphia's conduct, which was carried out under the color of state law, Plaintiff was deprived of rights and privileges secured to him by the Fourth Amendment of the United States Constitution to be free from the use of excessive force.

86.     Defendant City of Philadelphia violated Plaintiff's clearly established constitutional rights because of its lack of a policy and/or its failure to provide adequate training to its police officers.

## COUNT III:

## 42 U.S.C. § 1983 CLAIM AGAINST DEFENDANTS CLAIR AND SOMOGYI
### *FAILURE TO INTERVENE*

87.     Plaintiff hereby incorporates each of the foregoing paragraphs as if set forth fully herein.

88.     This claim is alleged pursuant to Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983.

89.     The claims alleged above and herein are predicated upon the applicable law and controlling doctrine, which, at all times relevant to this incident, were clearly established.

90.     A failure to intervene claim under Section 1983 is based on the protections of the Fourth Amendment against the use of excessive force.

91.     A claim for failure of a bystander officer to intervene under the Fourth Amendment exists where:  (a) an officer uses excessive force; (b) another officer, acting under color of law, has reason to know a fellow officer is using excessive force; (c) the observing

officer has a reasonable and realistic opportunity to intervene and fails to take reasonable steps to do so; and (d) this failure causes an individual to suffer harm.

92.     Plaintiff's Fourth Amendment rights were violated when Defendant Somogyi knew that Defendant Clair was using excessive force on Plaintiff and failed to take reasonable steps to prevent Defendant Clair from doing so, despite having an opportunity to prevent the harm done to Plaintiff.

93.     Plaintiff's Fourth Amendment rights were violated when Defendant Clair knew that Defendant Somogyi was using excessive force on Plaintiff and failed to take reasonable steps to prevent Defendant Somogyi from doing so, despite having an opportunity to prevent the harm done to Plaintiff.

94.     Defendants Somogyi and Clair's actions were of such an outrageous nature as to rise to the level of intentional, willful, wanton, or reckless conduct.

## COUNT IV:
### INTENTIONAL TORT CLAIM AGAINST DEFENDANTS CLAIR AND SOMOGYI
### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

95.     Plaintiff hereby incorporates each of the foregoing paragraphs as if set forth fully herein.

96.     Defendants Clair and Somogyi acted in an extreme and outrageous manner in punching, kicking, and beating Plaintiff.  Upon information and belief, they acted intentionally and with reckless disregard for Plaintiff's welfare, inflicting permanent emotional distress on Plaintiff.

97.     As a direct and proximate result of the above-described actions of Defendants Clair and Somogyi, Plaintiff suffered emotional distress that was severe in nature.

98.     Defendants Clair and Somogyi's actions were of such an outrageous nature as to rise to the level of intentional, willful, wanton, or reckless conduct.

## COUNT V:
## INTENTIONAL TORT CLAIM AGAINST DEFENDANTS CLAIR AND SOMOGYI
### *ASSAULT AND BATTERY*

99.     Plaintiff hereby incorporates each of the foregoing paragraphs as if set forth fully herein.

100.    Defendants Clair and Somogyi used excessive force by repeatedly punching, kicking, and beating Plaintiff.

101.    Defendants Clair and Somogyi's use of excessive force by repeatedly kicking, punching, and beating the restrained and injured Plaintiff was intended to cause harmful and/or offensive contact with Plaintiff.

102.    Defendants Clair and Somogyi intended to put Plaintiff in reasonable and immediate fear of a harmful or offensive contact.

103.    As a result of Defendants Clair and Somogyi's acts, Plaintiff was put in reasonable and immediate fear of harmful or offensive contact.

104.    Harmful and/or offensive contact with Plaintiff directly resulted from Defendants Clair and Somogyi's actions.

105.    Defendants Clair and Somogyi's conduct was not authorized, justified, or otherwise privileged.

106.    Defendants Clair and Somogyi committed these intentional torts against Plaintiff knowing that their actions were wrongful.

107.    Defendants Clair and Somogyi's desire was to bring about the result substantially certain to follow from their actions – injuries to Plaintiff.

17

108.     The actions of Defendants Clair and Somogyi were willful, wanton, reckless, callously indifferent, and in conscious disregard for the safety of others.

109.     As a direct and proximate result of the above-described actions of Defendants Clair and Somogyi, Plaintiff sustained severe injuries, causing him great physical pain and mental anguish.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff Daniel Maniscalco respectfully requests that this Court grant judgment jointly and severally in his favor and against Defendants as follows:

1.     Compensatory damages;

2.     Punitive damages;

3.     Reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

4.     Expert fees, costs, and the expenses of litigation;

5.     Any and all equitable relief that this Court may deem equitable and proper under the circumstances, including but not limited to training, disciplinary measures, and revisions to unlawful policies and customs; and

6.     Such other and further damages as this Court may deem just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury in this action for all issues so triable.

Dated:  June 30, 2016

Respectfully submitted,

/s/ *Benjamin K. Jacobs*
Jeffrey A. Sturgeon
Benjamin K. Jacobs
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel:  (215) 963-5600
Fax:  (215) 963-5001
Jeffrey.sturgeon@morganlewis.com
benajmin.jacobs@morganlewis.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Benjamin K. Jacobs, hereby certify that a true and correct copy of the foregoing First

Amended Complaint was served via overnight mail on this 30th day of June, 2016, upon the

following:

Jonathan Cooper
Philadelphia Law Department
Civil Rights Unit
1515 Arch Street, 14th Floor
Philadelphia, PA  19102

*Counsel for Defendants*

*/s/ Benjamin K. Jacobs*
Benjamin K. Jacobs